THOMAS GIBSON *v.* JAMES H. GREEN, Guardian.

1. PLEADING — BANKRUPTCY — DEMURRER TO PLEA OF DISCHARGE IN BANKRUPTCY IMPROPER.— It is erroneous to sustain a demurrer to a plea of discharge in bankruptcy, which is properly pleaded. Such plea entitles the defendant to the full effect given it by the bankrupt law.

2. SAME — SAME — FACTS WHICH OBVIATE PLEA OF DISCHARGE IN BANKRUPTCY SHOULD BE REPLIED.— If facts exist which obviate the plea of discharge in bankruptcy, they should be replied, and thus the judgment of the court may be obtained as to their sufficiency for that purpose.

3. ERRONEOUS TO RENDER JUDGMENT PERSONALLY AGAINST BANKRUPT — ASSIGNEE NECESSARY PARTY — CASE IN JUDGMENT.—Where a suit on a note

was pending, and an ancillary attachment was issued, levied and returned, and the bankruptcy of the defendant in the attachment was suggested and entered of record, and afterward the suit was revived against the assignee of such bankrupt, and subsequently the bankrupt pleaded his discharge in bankruptcy, in due form, to which a demurrer was sustained and leave to plead over, but the bankrupt declining to plead further, the plaintiff dismissed his suit as to the assignee in bankruptcy, and as to other defendants and took judgment generally against the bankrupt: *Held*, to be erroneous in dismissing the suit as to the assignee, and rendering judgment against the bankrupt, who, by his discharge in bankruptcy, was discharged from the debt, and was not liable to a personal judgment against him.

ERROR to the circuit court of Monroe county. BOONE, J.

The facts of this case are so distinctly and minutely stated the opinion of the court, as to render any other statement unnecessary.

*G. L. Potter*, for plaintiff in error.

I. Argument, in a case like this, is not necessary to secure a reversal. The bankruptcy of Gibson was admitted, and, upon motion of the plaintiff in the action, there was an order for the revival of the suit in the name of Pennington, his assignee, who was the party interested to contest the claim sued for, and to protect the property attached. The bankruptcy law vested all the interest of the defendant, upon the declaration of bankruptcy, in his assignee; and from that moment the bankrupt ceased to have any interest in the property attached, and the legal effect was the same precisely as if he had died out of the suit, and the estate had vested, by operation of law, in his heirs. In order to reach the property attached, a revivor against the assignee was necessary, precisely as a revivor against the heirs would have been necessary if the defendant had died and the estate had descended. After the declaration of bankruptcy the suit was as to the ·attachment, as much without a defendant as if Gibson had died. Counsel for Green understood this, when they asked an order to revive against the assignee, the party in whom the law vested the estate. It is for this reason that the attaching creditor is not permitted to proceed in the suit against the bankrupt to trial

and judgment, since there is no party defendant before the court. *Ex parte* Foster, 2 Story, 131 ; ib. 376. Such a suit cannot progress to trial, without the presence of the assignee as a party. Lacy v. Rockett, 11 Ala. 1002. It was, therefore, error to dismiss the suit as to the assignee, and proceed to trial against the bankrupt, who was incompetent to defend either the demand for money or the property.

2. It was error to sustain the demurrer to the plea of bankruptcy. That plea is in proper form, and sets forth the discharge in full. It does not refer to the attachment, but sets forth the discharge as a bar to the suit against the bankrupt. When it was pleaded, the suit stood upon the suggestion of the bankruptcy of Gibson, which was a fact admitted in the case, and upon the order for revivor, made at the instance of plaintiff against the assignee, and the case stood thus until the demurrer was disposed of. It was not until after the demurrer to the plea was sustained, that plaintiff dismissed his suit as to defendant McAllister, and Pennington the assignee, and the parties summoned as garnishees.

The pretext is, that the plea is not good as a discharge of the bankrupt, because of the attachment. But, as we have seen, the bankrupt could not, after he was declared a bankrupt, defend the suit nor contest the attachment. As to those matters he was out of the case, and could do nothing until the termination of the proceedings in bankruptcy, upon the question of his discharge. As to him the suit would continue suspended, until his certificate of discharge was granted or refused. If such discharge was granted, he could do no more than plead it in bar of a personal recovery against himself, and he was entitled to plead it as soon as it was granted. The suggestion of his bankruptcy suspended the suit as to him, and the discharge granted entitled him to demand that the suit should be terminated as to him. This was his right, and he was privileged to set forth the fact of his discharge, as he did, by plea. If the

plea had been confessed, the judgment in favor of Gibson
would not end the suit, nor affect either the attachment or
garnishments ; for such plea of discharge admitted the
validity of the debt sued for, admitted the attachment,
raised no question in defense of the suit, except that,
by reason of the discharge, no personal judgment could be
rendered against the defendant. Such was the effect of this
plea, under the bankrupt law. Now, suppose defendant
had, by plea, confessed the debt, and had admitted the force
of the attachment, and had only insisted that, by reason
of his discharge, no judgment could be rendered against
him personally, is there a pretense that, in such a case,
there might not, so far as defendant was concerned, have
been both a judgment discharging him, and also directing
a sale of the property to pay the demand thus admitted,
and the costs ? It is true this could not be done under the
law, because the assignee has a right to be heard ; but this
does not affect the question as to the defendant. If the
assignee had no such right, then it is plain that, upon such
plea of discharge, which is in law an admission of the
debt and the attachment, the judgment of the law would
be that defendant go thence without day, upon his plea of
personal exemption, and that the property be sold to pay
the debt and costs.

This view of the law was declared by the supreme court
of the United States, in a case to which the assignee had
become a party, and it was held, that judgment must be for
the bankrupt, upon his certificate of discharge, and a judg-
ment for the sale of the attached property to satisfy the
debt. Peck v. Jenness, 7 How. 623. Other decisions sustain
this view, but some of them do not seem to require revivor
against the assignee. Bates v. Tappan, 99 Mass. 376 ; Car-
penter v. Turnell, 100 ib. 450 ; Bowman v. Harding, 56 Me.
559 ; Leighton v. Kelsey, 57 ib. 85. This is a suit *in per-
sonam*, and not *in rem*. Nothing but money is sought to
be recovered ; and the law allows no plea to the attachment,
except a traverse of the affidavit. If this plea of discharge

is bad, as being no answer to the attachment, so would be a plea of payment.

3. The fact that Gibson had been declared a bankrupt had been admitted, and the suggestion entered of record in the case. Under the law, no further step could be taken, no trial had against the bankrupt until after the question of his discharge should be determined. We submit that, as the plea of discharge was demurred to, and put out of the case by judgment sustaining the demurrer, there was no longer any thing to show that the question of discharge has been determined; and if this view be admitted, it was error to proceed to judgment against the bankrupt; for, under the law, all proceedings against the bankrupt must be stayed until his discharge be granted or denied; and in this case, the plea being disposed of, the case stood still, suspended under the suggestion of bankruptcy.

4. This suit was commenced as an ordinary action of debt on the 22d March, 1866. The attachment was issued thereafter, in June, 1866. Neither the bond nor the writ contain any suggestion that this attachment was in aid of a pending suit; but the recitals are general, as if it was an original suit commenced by attachment.

Although Gibson had already appeared and pleaded, this subsequent attachment is to be levied to compel his appearance; and it requires the sheriff to "summon" him "to appear." There is nothing but the affidavit to show that an attachment was sought in aid of a pending suit.

We say, therefore, that these attachment papers do not belong to this case; and, if so, the ground of demurrer to the plea of discharge, does not exist.

*Houston and Reynolds*, for defendant in error.

1. Section 14 of the bankrupt act prescribes that the commencement of proceedings in bankruptcy shall dissolve any attachment sued out within four months next preceding the commencement of such proceedings. Upon the familiar maxim, "*expressio unius, exclusio alterius*," it follows

that attachments, sued out within four months, are dissolved, all others are not effected.

2. The levy of an attachment gives a lien, vests the creditor with the right to enforce satisfaction of his demand out of the attached property. The court will not presume, in the absence of some express provision, that it was the intention of congress to impair this right.

3. The principle is fully established by authority, that an attachment, more than four months before the commencement of proceedings in bankruptcy, is valid and may be enforced by judgment in the state courts. Davenport v. Tilton, 10 Metc. (Mass.) 320 ; Kittredge v. Warren, 14 N. H. 509 ; Kittredge v. Emerson, 15 ib. 227 ; Franklin Bank v. Batchelder, 23 Me. 60 ; Leighton v. Kelsey, 57 ib. 85 ; Perry v. Somerby, 57 ib. 552 ; Bowman v. Harding, 56 ib. 559 ; Bates v. Tappan, 99 Mass. 376 ; *In re* Dwight Scott, 3 Bank Reg. 181 ; S. C., 9 Am. Law Reg. 349 ; Peck v. Jenness, 7 How. (U. S.) 612, 625.

The attention of the court is specially called to the cases of Peck v. Jenness, 7 How. (U. S.) 612, 625, and of Bates v. Tappan, 99 Mass. 376.

I. The counsel for plaintiff in error in the court below did not seriously controvert the foregoing positions. They insisted that no judgment *in personam* should have been rendered against plaintiff in error. We admit that, if the plea of Gibson had been limited in its commencement as an answer to that part of the action which was a proceeding against him personally, then the position of counsel would be correct.

The proceeding in the court below was of a double nature, *in rem* and *in personam*. The plea that plaintiff in error was finally discharged as a bankrupt was presented as an answer to the whole action, *in rem* and *personam*, and was not limited, as it should have been, in bar of the "*personam*" of the action.

The general rule is, that every pleading must be an answer to the whole of what is adversely alleged. That

plea which professes by its commencement to answer the whole of the action, but which, in fact, applies to part only, is demurrable.   Stephens on Plead. 216 ; 1 Saund. 28, note 3; Thomas v. Heathorn, 3 Barn. & Cres. 477.

Hence the plea of Gibson, setting up his final discharge in bankruptcy, though a good defense to the proceeding *in personam* (part of the action), but not limited in its commencement to that part only, was bad, and the demurrer to it was properly sustained by the court below.

II. If this court should reach the conclusion that the judgment *in personam* against Gibson, plaintiff in error, was erroneous (and we have endeavored to show that it was not), yet it will not for this reason reverse and remand the cause.   The judgment condemning the attached property is unquestionably correct, and this court would not set aside that judgment, even if it decides that the judgment *in personam* was error.

III. We do not deem it necessary to notice the second assignment of errors.   The record does not show that the property attached was the property of a third person, and if such were the fact, the law does not require that the owner of the property be made a party by citation.   The owner of the property, if he be not a party to the suit, is not concluded by any judgment that may be rendered.

Article 34, p. 381 of Code, cited by counsel for plaintiff in error, applies to a garnishee, and not to the case at bar.

IV. The question presented by the fourth assignment of error, that the judgment is excessive, will not be noticed by the court unless a calculation shall be presented, in writing and figures, showing such error, with a certificate of counsel not interested, that the calculation is not correct.   Rule 25.

If such calculation should be presented, we remit the excess above the true amount.

TARBELL, J. :

This action was commenced in the circuit court of Monroe county, in 1866, by James H. Green, as the guardian of

Mary Bartow, against Thomas Gibson and James D. McAllister, to recover the amount due on a promissory note, made by Thos. Gibson, Benj. A. Allen and James D. McAllister, December 30, 1859, for $2,420, due twelve months after its date, with interest at eight per cent, payable to said Green, guardian. The said Benjamin A. Allen having died, and no administration having been granted on his estate, was not sued. The defendants pleaded the general issue, payment, and failure of consideration, which consisted of negroes represented to be slaves for life ; whereas, etc. The plaintiff demurred to the last plea, and this demurrer seems not to have been disposed of. In this stage of the case an ancillary attachment was issued, levied and returned therein. Upon this attachment the plaintiff's attorney, in writing, instructed the sheriff to levy upon two certain lots of land, being lots 12 and 13, in block 86, New Aberdeen ; and to summon as garnishees, several named in the instructions, which was done by the sheriff.

At a subsequent term of the circuit court, viz., in August, 1868, the bankruptcy of the defendant, Thos. Gibson, was suggested and entered of record. In February, 1869, the cause was revived against Geo. W. Pennington, assignee of Gibson in bankruptcy, and continued at the January term of said court, 1870. Gibson filed a plea in abatement to the writ of attachment, traversing the truth of the causes alleged for the suing out thereof; subsequently, by order of the court, the plea in abatement was stricken out, without prejudice, and the defendant Gibson filed his plea of final discharge as a bankrupt. To this plea the plaintiff demurred, stating the following causes of demurrer : 1. Because the same is no answer to the proceeding *in rem* instituted in this cause. 2. Because it is no bar to the ancillary attachment sued out in this cause. 3. Because said plea is no bar to this action. This demurrer was sustained and leave given to defendant to plead over, which he declined to do. Thereupon plaintiff dismissed his suit as to James D. McAllister, Geo. W. Pennington, assignee, and

as to all the garnishees summoned in the cause.    Defendant Gibson saying nothing further, a general judgment was then rendered against him for the amount of the note sued on, interest, costs, etc.

A bill of exceptions was filed by defendant Gibson, and another by Lucy A. Watson, who, being refused by the court leave to assert her claim to the real estate levied upon by the attachment, and to have her right thereto tried by a jury, excepted to this refusal of the court and filed her bill of exceptions.

Defendant Gibson brought writ of error, and assigns here the following causes why the action of the court below should be reversed: 1. Because the court below erred in sustaining the demurrer of defendant in error to the plea of discharge in bankruptcy of plaintiff in error, and entering up judgment against plaintiff in error generally. 2. Because the court below erred in rendering judgment against the property attached, it being shown by the sheriff's return on said attachment that a third party claimed the property attached, which said third party had not been brought into court by citation as the statute required. 3. Because the court below erred in entering up judgment individually against plaintiff in error in the face of his discharge in bankruptcy. 4. Said judgment is excessive in the damages adjudged. 5. It was error to dismiss the suit as to Pennington, assignee in bankruptcy of plaintiff in error, and in taking judgment against plaintiff in error an admitted bankrupt, without bringing into court said assignee in bankruptcy. 6. Said judgment is erroneous, being a personal judgment against an admitted bankrupt; and the order for a *venditioni exponas* to sell the lots, as if attached, is erroneous, because neither said lots nor any interest therein was attached as the property of plaintiff in error; and said alleged attachment was superseded by said proceedings in bankruptcy, and said property was no longer subject or liable to said alleged attachment.

The non-disposition of the demurrer to defendant's third plea is not assigned for error. Probably non-action upon the demurrer was waived by consent, or has been, by mutual agreement, disregarded, or possibly the record is defective in failing to note the action of the court or counsel with reference thereto. In any event, the appearance in the record of a question or questions undisposed of is a perplexity and chargeable to laxity in practice, which it is desirable to reform.

A demurrer to the plea of discharge in bankruptcy we think was a mistake, and are of the opinion that a reply stating the time of suing out of the attachment and the date of the proceedings in bankruptcy would have been the proper practice. If more than four months had elapsed between the levy of the attachment, and the commencement of the proceedings in bankruptcy, the creditor is entitled to the benefit of the lien thus acquired. The discharge was a bar to all further personal claim upon the defendant, but it did not dissolve the attachment unless issued within the time specified in the fourteenth section of the bankrupt law. These data should have been furnished in a reply to the plea of final discharge in aid of the judgment of the court.

The pendency of the proceedings in bankruptcy had been suggested and entered upon the record. This suspended the cause until the final action of the bankrupt court granting or denying final discharge. Upon the decision of the court sustaining the demurrer, if correct, the discharge was virtually out of the case, and the cause again stood suspended upon the suggestion of pending proceedings in bankruptcy, thus rendering the personal judgment irregular, even in that condition of the record. Had the creditor, however, replied instead of demurring, setting up his lien by virtue of the attachment, it would have properly placed the court in possession of the facts upon which to base, and which would have probably led to, proper judgments, first, of the discharge of the defendant from all personal claim in the original action, or growing out of the

ancillary proceedings ; and, second, of condemnation of the property attached for the payment of the debt and costs.

The discharge duly granted is declared by the bankrupt law to "release the bankrupt from all debts, claims, liabilities and demands which were, or might have been, proved against his estate in bankruptcy, and may be pleaded by a simple averment that on the day such discharge was granted to him, setting the same forth in *hæc verba* as a full and complete bar to all suits brought on any such debts, claims, liabilities or demands, and the certificate shall be conclusive evidence in favor of such bankrupt of the fact and the regularity of such discharge."

Upon pleading his discharge, the defendant was entitled to the judgment of the court, giving effect to the foregoing provision of the bankrupt law. From that moment, except as a matter of form, the defendant was a stranger to the controversy. He had no longer any interest in the property involved, and no personal claim could be made against him, either in that proceeding or in the original action. Such, at the same time protecting the lien of the creditor, should have been, in its results, the judgment of the court.

The plea seems to be correct in form and substance, and no objection is made to it on these grounds. It is not pleaded in terms to the attachment proceeding, and we apprehend a reference specially thereto, claiming the discharge as a dissolution of the attachment, or excepting the latter from its operation, would be improper. We can see no objection to the plea, or the time and mode of filing it ; nor how the defendant could well have said more or less. The discharge having been pleaded, it devolved upon the court to direct the proper judgments. The personal judgment, against Gibson, was clearly erroneous.

Whether the assignee is a necessary party, in a case like this, is a question not fully settled by the authorities, as far as we have been able to ascertain. The cases of Peck v. Juness, 7 How. (U. S.) 623 ; Bates v. Tappan, 99 Mass. 376 ; Carpenter v. Turrell, 100 ib. 450 ; Bowman v. Harding, 56

Me. 559 ; Leighton v. Kelsey, 57 ib. 85, appear to have pro-
ceeded to judgment against property attached, without the
presence of the assignee.    In *Ex parte* Foster, 2 Story, 131,
the reasoning of Judge Story is decidedly, if not conclu-
sively, in favor of the proposition that the assignee is an
essential party in a case like this.    The doctrines of that
case were substantially these :  By the decree of bankruptcy,
property and rights of property of the bankrupt are di-
vested from him, and vest in the assignee as soon as one is
appointed ; and such decree relates back to the time of the
petition ; consequently, pending the proceedings in bank-
ruptcy, before or after the decree, an attaching creditor will
not be permitted to proceed in the suit against the bankrupt
to trial and judgment, because there can be no party
defendant properly before the court.    If an attaching
creditor, knowing that proceedings in bankruptcy have been
instituted, should, nevertheless, proceed in his suit to get a
judgment against the bankrupt, before an assignee was
appointed, it would be a fraud upon the law.    While the
bankrupt proceedings are in progress, no attaching creditor,
by a mere race of diligence, will be permitted to overreach
and defeat the just rights of the other creditors.

Chancellor Walworth, in Lowry v. Morrison, 11 Paige,
327, was of the opinion, in a similar case, that the assignee
was a necessary party defendant, and that the case could not
proceed to judgment without him.

This view is assailed by Judge Strong, in 23 Barb. 201,
but his reasoning is adverse to his conclusion.    Lacey v.
Rockett, 11 Ala. 1002, purports to be an authority for the
doctrine that, in such a case, the cause cannot proceed to
judgment without the presence of the assignee.    *Vide*, also,
Barb. on Parties, 129 ; Story's Eq. Pl., § 158 *a*, and § 726,
and cases cited in notes.

By the terms of the bankrupt act, the property of the bank-
rupt is vested in the assignee.    Section 14 of the bankrupt
law of 1867, enacts that, "all" the bankrupts' "rights of
redeeming such property, or estate, with the like right, title,

power and authority to sell, manage, dispose of, sue for and recover or defend the same, as the bankrupt might or could have had, if no assignment had been made, shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee; and he may sue for and recover the said estate, debts and effects, and may prosecute and defend all suits at law or in equity pending at the time of the adjudication of bankruptcy, in which such bankrupt is a party in his own name, in the same manner and with like effect as they might have prosecuted or defended by such bankrupt," etc.

It seems to us in accordance with reason and analogy, that the assignee should be made a party to this suit, or at least that he should be afforded the opportunity, by citation, to come in if he will. He represents the creditors of the bankrupt whose interests are entitled to protection. He takes this property subject to all legal liens upon it, and in his hands he can interpose every defense open to the bankrupt, whether to the demand itself, or to the attachment, interposing a defense, in his discretion, in the best interests of the estate. Because of the personal judgment against the bankrupt, and the dismissal as to the assignee, we reverse the judgment of the court below, and remand the cause for further proceedings.